534 S.E.2d 33

**Barbara E. THOMPSON and Michael J. Thompson, Plaintiffs Below, Appellants,**

v.

**BRANCHES–DOMESTIC VIOLENCE SHELTER OF HUNTINGTON, W. VA., INC., Virginia Daniels and Dawn Boothe, Defendants Below, Appellees.**

No. 26561.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 25, 2000.

Decided July 10, 2000.

James W. St. Clair, Esq., St. Clair & Levine, Huntington, West Virginia, Attorney for Appellants.

W. Joseph Bronosky, Esq., Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, West Virginia, Attorney for the Appellees.

MAYNARD, Chief Justice:

The appellants, Barbara and Michael Thompson, allege the appellees, Branches–Domestic Violence Shelter and two employees, Virginia Daniels and Dawn Boothe (Branches), released or leaked confidential information regarding the Thompsons' personal life in violation of W.Va.Code § 48–2C–15. The alleged leak took place during the investigation of an underlying personal injury action. The Circuit Court of Cabell County, West Virginia, granted summary judgment to Branches. We affirm.

This case originates from a personal injury which Barbara Thompson received on October 7, 1994. At that time, both Barbara Thompson and Julia Good were employees of Branches. Ms. Thompson was helping Ms. Good jump-start her car when Ms. Good's foot slipped off the clutch, causing the car to lurch forward and pin Ms. Thompson's leg

between two cars. Ms. Thompson and her husband, Michael Thompson, sued Ms. Good's insurer, Nationwide Insurance Company. Following discovery, the underlying case settled. Meanwhile, the activity which gave rise to the present action took place.

On October 16, 1994, Mr. and Ms. Thompson became embroiled in a domestic dispute. Ms. Thompson left home and became a client at Branches. The following day, Ms. Thompson gave a statement to Deputy Sheriff Robert Adkins and filed a domestic violence petition against her husband. The original of the written statement was given to Dawn Boothe, a case worker at Branches. A warrant for wanton endangerment was issued against Mr. Thompson. These charges were subsequently dropped.

During the pendency of the personal injury litigation, Nationwide's defense counsel, R. Brandon Johnson, took depositions of both Mr. and Ms. Thompson. At that time, the Thompsons were questioned regarding their personal lives. They stated that they believed the personal information could have come from Ms. Thompson's client file at Branches. On October 3, 1995, counsel for the Thompsons sent a letter to the Board of Directors at Branches requesting an investigation. The President of the Board responded by stating that an investigation would be difficult to conduct since the request was not specific. Thereafter, on November 8, 1995, Mr. Thompson telephoned Attorney Johnson to inquire regarding the source of the personal information. Mr. Thompson alleged that Attorney Johnson had obtained confidential records from Branches and advised that a possible lawsuit for breach of confidentiality was being considered.

The accident case settled in April 1996. On June 7, 1996, Mr. Thompson filed a West Virginia State Bar disciplinary complaint against Attorney Johnson, alleging that the attorney unethically acquired information from Branches. In the complaint, Mr. Thompson stated that "[t]his matter came to me and my wife's attention at my wife's first of several depositions regarding an auto accident which occurred on Oct. 2, 1994, the first deposition was held on Sept. 13, 1995." The

disciplinary complaint continued by stating, "I further informed R. Brandon Johnson that I knew how and where he obtained this information and that a possible suit for Breach of Confidentiality was being considered against Branches Domestic Violence Shelter and that he would be part of it." The Lawyer Disciplinary Board found no merit in the allegation and dismissed the complaint.

The Thompsons then filed a lawsuit against Branches on January 27, 1997, alleging release of confidential information in violation of W.Va.Code § 48–2C–15 and slander. On February 7, 1997, the complaint was amended to reflect the correct name of the shelter. Both Mr. and Ms. Thompson testified during depositions that they discovered the disclosures on September 13, 1995. Following the deposition testimony, Branches filed a motion for summary judgment claiming "there exists no genuine issue as to any material fact and the defendants are entitled to summary judgment as a matter of law." Branches argued the action was barred by the statute of limitations. The Thompsons responded by conceding "that they suspected employees of Branches had released certain information concerning Barbara Thompson's case when their deposition was taken on September 13, 1995." However, they went on to state that they did not know information had been released until August 10, 1996, the date they received a letter from disciplinary counsel authored by Attorney Johnson.[1] The circuit court denied Branches' motion for summary judgment, finding that a one-year statute of limitations applies but that the Thompsons "did not know nor could they have known of the elements in their complaint until plaintiff Michael Thompson received the letter dated August 8, 1996 from the office of disciplinary counsel."[2]

Branches filed a motion for reconsideration and summary judgment alleging the action was barred by the statute of limitations. In their memorandum to the court, Branches summarized by stating, "Thus, by plaintiff Michael Thompson's own handwriting he 'knew' the particulars of his allegations at least by November 7 or 8, 1995 and was already threatening to sue." The circuit court granted summary judgment to Branches by stating:

> The evidence is sufficient to show that the Plaintiffs knew, or should have known, not only of their injury but who caused it no later than November 8, 1995. The letter of complaint to the Disciplinary Board of the State Bar makes this clear, wherein the Plaintiff suggests that a possible suit for breach of confidentiality was being considered against Branches at that time.

The Thompsons then filed a motion to reconsider, claiming the action is governed by a two-year statute of limitations and asking that Michael Thompson be dismissed as a party but that Barbara Thompson remain in the action. The court denied the motion and dismissed the action with prejudice. It is from this order the Thompsons appeal.

On appeal, the Thompsons allege that the circuit court erred by deciding a disputed issue of fact and by failing to find the fraudulent concealment doctrine tolled the statute of limitations. The Thompsons also contend the circuit court erred by determining that Barbara Thompson had the same knowledge as her husband regarding the accrual date of the action. Finally, the Thompsons argue that this cause of action is governed by a two year statute of limitations. Branches argues the circuit court properly granted summary judgment, determining the action is barred by the statute of limitations. We agree.

■ This case is here on appeal from the circuit court's denial of the Thompsons' motion to alter or amend judgment. West Virginia Rule of Civil Procedure 59(e) states that "[a]ny motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment." Regarding

---

1. Attorney Johnson's letter is not in the record submitted on appeal. The Thompsons' response to the appellees' motion for summary judgment specifically states that "[i]n that letter Mr. Johnson admits that he obtained information from Julia Good that Mr. Thompson had been abusive to Mrs. Thompson resulting in a domestic violence petition being filed."

2. The case was assigned to Judge Egnor, who subsequently retired. The case was then assigned to Judge Cummings.

Rule 59(e) motions, this Court previously said:

> The practical effect of such a motion is to enlarge the time within which an appeal must be filed as to those matters which are the subject of the motion.... In other words, only those errors raised in the motion to alter or amend judgment benefit from an extended appeal period; those issues not assigned as grounds supporting an alteration or amendment of the judgment retain the original filing period applicable to appeals in general.
>
> While such motions are readily available to parties, appeals to this Court are more frequently premised upon the errors attending the underlying judgment as opposed to the propriety of a denial of a Rule 59(e) motion.... Thus, when this Court has been asked to decide an appeal arising from the denial of a motion to alter or amend a judgment, we typically have looked beyond the motion to the nature of the underlying judgment from which the motion has been made, and from which the appeal ultimately is taken, to find the appropriate standard of review.

*Wickland v. American Travellers Life Ins. Co.,* 204 W.Va. 430, 434–35, 513 S.E.2d 657, 661–662 (1998). (Citations omitted). This discussion was summarized in Syllabus Point 1 of *Wickland,* which reads as follows: "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed."

■ With this in mind, we reiterate that " ' "[a] circuit court's entry of summary judg-

ment is reviewed de novo." Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).' Syllabus Point 1, *McGraw v. St. Joseph's Hospital,* 200 W.Va. 114, 488 S.E.2d 389 (1997)." Syllabus Point 2, *Wickland v. American Travellers Life Ins. Co.,* 204 W.Va. 430, 513 S.E.2d 657 (1998). Furthermore, " ' "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992)." Syllabus Point 2, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

■ Summary judgment in favor of Branches was granted on December 18, 1998. The Thompsons filed their motion to reconsider on December 28, 1998. The circuit court denied the motion to alter or amend judgment on February 5, 1999. The Thompsons then filed their petition for appeal on June 3, 1999.[3] We reiterate that the only errors which benefit from the extended appeal period are those which are raised in the Rule 59(e) motion to alter or amend judgment. The issues not assigned as grounds supporting an alteration or amendment of judgment retain the original filing period. Accordingly, we may only consider the errors raised by the Thompsons in their Rule 59(e) motion as their petition for appeal was filed more than four months after summary judgment was granted.

The Thompsons contend their claim for breach of confidentiality in violation of a statute, W.Va.Code § 48–2C–15 (1994),[4] is con-

---

**3.** West Virginia Rule of Appellate Procedure 3(a) states in pertinent part:

> (a) *Time for petition.*—No petition shall be presented for an appeal from, or a writ of supersedeas to, any judgment, decree or order, which shall have been rendered more than four months before such petition is filed in the office of the clerk of the circuit court where the judgment, decree or order being appealed was entered[.]

**4.** W.Va.Code § 48–2C–15 (1994) reads as follows:

> (a) No program or shelter receiving funds pursuant to this article shall disclose or be compelled to disclose, release or be compelled to release any written records created or maintained in providing services pursuant to this article except:
>
> (1) Upon written consent of the person seeking or who has sought services from the program or the shelter;
>
> (2) In any proceeding brought under sections four and five [§§ 9–6–4 and 9–6–5], article six, chapter nine of this code or article six

trolled by a two-year statute of limitations. However, at the time the Thompsons responded to the appellees' motion for summary judgment below, they stated, "There is no question that *Alan vs. Smith* [sic], [179 W.Va. 360,] 368 S.E.2d 924 (WV 1988)[,] requires an action for breach of confidentiality and must be filed within one year from date that the plaintiff knew or should have known with the exercise of reasonable diligence, of the identity of the person or persons believed to be responsible." They believed at that time the question to be addressed was when they knew or with reasonable diligence should have known that Branches released the information. After Branches' motion for summary judgment was granted, the Thompsons filed a motion to reconsider raising the argument for the first time that a two-year statute of limitations applies. On appeal, the Thompsons argue the breach of confidentiality should be viewed as a personal injury and governed by a two-year statute of limitations.

W.Va.Code § 55-2-12 (1959) states:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

This Court recognized in *Slack v. Kanawha County Housing*, 188 W.Va. 144, 423 S.E.2d 547 (1992), that this provision must be read

in pari materia with W.Va.Code § 55-7-8a(a) (1959), which states:

(a) In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or injuries to the person and not resulting in death, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable.

Commenting on W.Va.Code § 55-7-8a, this Court remarked:

By isolating causes of action for fraud and deceit and combining them with personal actions which will survive under W.Va.Code, 55-7-8a(a), it is apparent that the Legislature intended to exclude from statutory survivability under subsection (a) other personal tort actions such as defamation, false arrest and imprisonment, and malicious prosecution. These latter personal actions, lacking statutory survivability and possessing no common law survivability, take a one-year statute of limitations under W.Va.Code, 55-2-12(c).

*Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 161 W.Va. 588, 594, 244 S.E.2d 321, 325 (1978). These pertinent Code sections were later summarized in the following manner: "[U]nless a tort expressly falls within the classification of property damage, personal injury, or fraud or deceit, a one-year statute of limitations governs rather than a two-year period." *Wilt v. State Auto. Mut. Ins. Co.*, 203 W.Va. 165, 170, 506 S.E.2d 608, 613 (1998). We note that invasion of privacy is a similar tort and is governed by a one-year statute of limitation. *Slack*, 188 W.Va. at 148, 423 S.E.2d at 551.

We are not dealing with an entirely new issue; this Court previously recognized

[§ 49-6-1 et seq.], chapter forty-nine of this code;

(3) As mandated by article six-a [§ 49-6A-1 et seq.], chapter forty-nine and article six [§ 9-6-1 et seq.], chapter nine of this code;

(4) Pursuant to an order of any court based upon a finding that said information is sufficiently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by this section;

(5) To protect against a clear and substantial danger of imminent injury by a client to him or herself or another;

(6) For treatment or internal review purposes to the staff of any program or shelter if the client is also being cared for by other health professionals in the program or shelter.

(b) No consent or authorization for the transmission or disclosure of confidential information shall be effective unless it is in writing and signed by the client. Every person signing an authorization shall be given a copy.

the tort of breach of confidentiality in violation of a statute. In *Allen v. Smith*, 179 W.Va. 360, 368 S.E.2d 924 (1988), a patient brought an action against her psychiatrist for releasing confidential information to her husband's attorney in a divorce proceeding, a violation of W.Va.Code § 27–3–1 (1977). This Court found that sufficient facts were alleged to support submission of the case to a jury; however, this Court also said that the circuit court properly ruled the patient's cause of action was barred by a one-year statute of limitations. The case *sub judice* alleges breach of confidentiality by a domestic violence shelter in violation of a statute. This tort is similarly governed by a one-year statute of limitations. We, therefore, hold that the tort of breach of confidentiality in violation of a statute is governed by a one-year statute of limitations.

■ On October 3, 1995, the Thompsons' attorney wrote a letter to Branches' board members stating that during Barbara Thompson's deposition regarding the accident, Nationwide's attorney questioned her about her personal life and her domestic situation. The Thompsons' attorney further maintained that:

> The questions that were posed obviously came from confidential information which was given to your organization by Mrs. Thompson. The attorney for the insurance company knew about matters that are not in public records but are matters which are contained in your files. These matters were released either by or with the consent of your director, Virginia Daniels, and/or your employee Julia Good.

The allegations against Branches did not end with this letter.

On June 7, 1996, Mr. Thompson filed a disciplinary complaint in his own handwriting with the Lawyer Disciplinary Board. In the disciplinary complaint, Mr. Thompson acknowledged that he and his wife were aware that confidential information had been leaked on September 13, 1995. The complaint specifically reads in part as follows:

> I would like this board to consider an investigation into R. Brandon Johnson's questioning my wife Barbara regarding her highly personal and private life. Our private life had absolutely nothing to do with the fact that Julia Goode's neglect and ignorance injured my wife.
>
> This matter came to me and my wife's attention at my wife's first of several depositions regarding an auto accident which occurred on Oct. 7, 1994, the first deposition was held on Sept. 13, 1995.
>
> \* \* \*
>
> After learning as to what R. Brandon Johnson had questioned my wife about, we realized that a conspiracy had occurred through Branches, and shortly discovered that Virginia Daniels & Dawn Booth were behind it, and that Julia Goode the defendant in the accident claim was aware of what had transpired.
>
> \* \* \*
>
> I phoned R. Brandon Johnson around 4:15 pm on Nov. 7 or 8, 1995, at approximately 20 minutes after 5 pm that same day I spoke with my attorney James St. Clair, to which my attorney was concerned regarding the phone call I had made to R. Brandon Johnson.
>
> During mine and R. Brandon Johnson's phone communication I asked him to surrender all the information regarding me and my wife's private life over to my attorney James St. Clair however upon my request R. Brandon Johnson became very unprofessional and childish.
>
> I further informed R. Brandon Johnson that I knew how and where he obtained this information and that a possible suit for Breach of Confidentiality was being considered against Branches Domestic Violence Shelter and that he would be a part of it.
>
> \* \* \*
>
> I would like it to be known that my attorney did in fact address a letter on October 3, 1995 to each and every board member of Branches Domestic Violence Shelter and requested an investigation into the Breach of Confidentiality and the conduct of these employees[.]

■ In West Virginia, the law with regard to when the statute of limitations begins to

run is clearly stated in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997):

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Mr. Thompson specifically states that the matter came to both his and his wife's attention as early as September 13, 1995. By their own admission, the Thompsons acknowledge they were aware of the alleged leak by November 8, 1995. Not only does Mr. Thompson state they were aware of a leak, he also names the people involved. To later argue they did not know about the leak until August 10, 1996 did not convince the circuit court. After studying the record and the dates involved, neither are we convinced that Michael Thompson was aware of what had transpired but that Barbara Thompson had no knowledge of the alleged leak. She did not attempt to distance herself from her husband's statements until after summary judgment was granted.[5]

The Thompsons filed their lawsuit more than one year after they believed a leak of confidential information occurred. Consequently, the lawsuit was filed outside of the statute of limitations. For this reason, we affirm the Circuit Court of Cabell County.

Affirmed.

---

**5.** If employees of a domestic violence shelter leaked confidential information regarding a client, that is indeed appalling. Employees of domestic violence shelters clearly owe a statutory duty of confidentiality to their clients. If this claim had been filed within the statute of limitations, the shelter could be confronted with significant liability.