FILED
**November 15, 2016**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 15-0692 – *Horton v. Professional Bureau of Collections of Maryland, Inc.*

LOUGHRY, J., joined by KETCHUM, C. J. and WORKMAN, J., concurring:

I concur in the majority's conclusion that the petitioner's claim pursuant to West Virginia Code § 46A-2-127(c) does not survive the death of her decedent. I write separately, however, to clarify that the majority's analysis yields equally to the broader conclusion that a cause of action pursuant to the unfair debt collection practices provisions of the West Virginia Consumer Credit and Protection Act (hereinafter "WVCCPA" or "the Act"), West Virginia Code §§ 46A-2-122 through 129a, is not survivable. For reasons that are unclear and despite the petitioner's assertion of a variety of violations of the unfair debt collection provisions of the WVCCPA, the majority unnecessarily restricts its holding to Section 127(c). Clearly, however, a cause of action arising under any portion of the unfair debt collection practices provisions of the WVCCPA does not survive by virtue of the unmistakable statutory language and application of our survivability statute, West Virginia Code § 55-7-8a(a).

As set forth by the majority, the petitioner alleges that prior to his death, the petitioner's decedent, Mr. Dudding, received telephone calls from the respondent in an attempt to collect a debt. The petitioner alleges that the respondent made these calls without properly identifying itself and after being advised that Mr. Dudding was represented by counsel. Mr. Dudding filed a complaint alleging violations of the WVCCPA, specifically West Virginia Code §§ 46A-2-125(d) (prohibiting calling any

1

person more than thirty times per week or engaging in telephone conversation more than ten times per week with intent to annoy, abuse, oppress or threaten),[1] -128(e) (prohibiting communication with a consumer seventy-two hours after written notice that the consumer is represented by an attorney), -127(a) (prohibiting use of anything other than a business' true name while collecting debt), and 127(c) (prohibiting failure to disclose the name and business address of the collection agency). The majority focuses on the petitioner's Section 127(c) claim based on the respondent's purported failure to identify itself on caller ID and concludes that such an act is not inherently fraudulent or deceitful, and therefore, the Section 127(c) claim is not afforded survivability pursuant to West Virginia Code § 55-7-8a(a). The majority expressly notes that the petitioner asserted additional violations of the unfair debt collection practices provisions of the WVCCPA that she claims are analogous to fraud and deceit, but "fails to develop these arguments." In spite of this failure to develop an argument in support of their survivability and the clear presentation of the larger issue of survivability of unfair debt collection claims, the majority simply side-steps the issue. To avoid any suggestion that *other* provisions of the unfair debt collection practices provisions of the WVCCPA may be survivable, I write

---

[1]The wording of this subsection in effect at the time Mr. Dudding filed suit prohibited only "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number." W.Va. Code § 46A-2-125 (1974). This subsection was amended in 2015 to, among other things, include quantitative benchmarks for such calls, as indicated above.

separately to clarify that the majority's analysis does in fact serve to render a cause of action under any of these provisions abated upon death of the consumer.

Although not addressed by the majority, the statutory language of the unfair debt collection practices provisions of the WVCCPA clearly indicates that an estate may not maintain a cause of action for violations thereof. West Virginia Code § 46A-5-101(1) creates the cause of action for violation of these provisions. This statute states plainly that, upon commission of a "prohibited debt collection practice . . . the *consumer* has a cause of action . . . ." (emphasis added). *Id.* West Virginia Code § 46A-2-122 sets forth its own definitions specifically applicable to the unfair debt collection practices provisions of the WVCCPA: "For purposes of this section and sections one hundred twenty-three . . . [through] one hundred twenty-nine-a . . . of this article, the following terms shall have the following meanings . . . ." It then defines "consumer" as "any *natural person* obligated or allegedly obligated to pay any debt." W.Va. Code § 46A-2-122(a) (emphasis added). Therefore, a cause of action for violation of "prohibited debt collection practices" belongs exclusively to the "consumer," who for purposes of such claim can only be a "natural person." As such, it is clear that an unfair debt collection practices act claim may not be maintained or vindicated by an estate.[2]

---

[2]The petitioner argues that because she was substituted as the party plaintiff as Mr. Dudding's personal representative, rather than "the estate," and is a natural person, she satisfies the requirements of the statute. However, this Court has held that "simply (continued . . .)

Notwithstanding this uncomplicated statutory construction and interpretation, West Virginia's survival statute compels the same conclusion. "A cause of action created by statute survives when and only when some provision for its survival is made in the statute itself, or in some other statute." 1 C.J.S. *Abatement and Revival* § 151, at 206 (1985). The WVCCPA itself contains no statutory provision for survivability. That fact alone is significant. As the Texas Supreme Court observed regarding its hybrid Deceptive Trade Practices Act-Consumer Protection Act, "we must at least begin our analysis by noting that the Legislature clearly knew how to indicate that warranty claims were assignable, but did not do so in the DTPA." *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 84 (Tex. 2004).[3]

Looking beyond the WVCCPA's silence, however, our survival statute further supports a lack of survivability. At common law, "personal" tort actions typically did not survive and actions for breach of contract or which affected property interests did

---

because a claimant falls into one of the categories of persons listed in Rule 17(a) [as a real party in interest] does not end the analysis; the claimant must still establish they have a right under the substantive law to initiate a lawsuit to enforce some right." *Keesecker v. Bird*, 200 W.Va. 667, 677, 490 S.E.2d 754, 764 (1997). As discussed *infra*, the petitioner has no substantive right to advance a claim that does not survive her decedent. Regardless, despite being a "natural person," the petitioner is not personally "obligated or allegedly obligated to pay" the debt of Mr. Dudding. W.Va. Code § 46A-2-122(a). Rather, as personal *representative*, she performs a ministerial function to administer his estate, which may or may not include ensuring that the obligations of the estate are fulfilled.

[3] The fact that assignability has often been viewed as coterminous with survivability makes this observation equally applicable to the issue at bar.

survive. 1 Am.Jur.2d, Abatement, Survival, and Revival § 56 ("[A] cause of action sounding in tort generally does not survive unless property or contract rights are involved."). However, West Virginia Code § 55-7-8a(a), enacted in 1959 and entitled "Actions which survive; limitations; law governing such actions," ameliorated the harsh common law effect on personal injury tort actions and provides:

> In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or injuries to the person and not resulting in death, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable.

In short, property damage claims, personal injury claims, and actions for deceit/fraud specifically survive as well as anything which "survive[s] at common law."[4]

Albeit only briefly discussed by the majority, this Court has had occasion to assess the survivability of a highly comparable statutory enactment, which appropriately guides our analysis.[5] In *Wilt v. State Automobile Mutual Insurance Company*, 203 W. Va. 165, 506 S.E.2d 608 (1998), the Court sought to resolve the issue of the statute of limitations for claims brought under the Unfair Trade Practices Act ("UTPA"). The *Wilt*

---

[4]The petitioner does not argue that WVCCPA claims survive at common law, nor that such claims are sufficiently akin to a personal injury to survive. The petitioner makes a cursory assertion that the petitioner's claim for attorney's fees under the WVCCPA are an "injury to property rights" without any supporting authority.

[5]In fact, the claims actionable under unfair trade practices and consumer credit acts are so comparable, Texas has a hybrid Unfair Trade Practices and Consumer Credit Protection Act called the "Deceptive Trade Practices-Consumer Protection Act." *See* Tex. Business & Commerce Code Ann. § 17.41 (1973).

Court analyzed whether a UTPA claim was "analogous to a claim for fraud" and/or deceit and therefore survivable, in which event it would be afforded a two-year statute of limitations. *Id.* at 167, 506 S.E.2d at 610. Upon analysis, the Court expressly rejected the notion that a UTPA claim was analogous to a claim for fraud, stating, "Viewing claims under the Act as necessarily fraudulent in nature is problematic, however, because the type of conduct that constitutes an unfair settlement claim may include a variety of factual scenarios which lack the requisite elements of a fraud claim." *Id.* The Court then examined the variety of factual bases for violations of the UTPA including failure to timely act on an investigation, failure to implement procedures, and misrepresentation of pertinent facts relating to coverage. *Id.* at 168, 506 S.E.2d at 611. The Court acknowledged that while "the traditionally recognized elements of a fraud claim might exist with regard to those acts of misrepresentation or deception that constitute an unfair settlement claim, other conduct that qualifies as an unfair settlement practice clearly does not amount to fraud." *Id.* The Court then identified additional deception-neutral prohibitions under the UTPA which were not "aimed strictly at the elimination of conduct that is fraudulent in character," and concluded that a UTPA claim was not tantamount to fraud and/or deceit for purposes of survivability. *Id.* at 169, 506 S.E.2d at 612.

The applicability of this rationale is markedly demonstrated in the separately designated portions of the unfair debt collection practices provisions of the WVCCPA themselves. Section 124 outlines acts that are forbidden as "Threats or

coercion." Section 125 similarly describes acts that are forbidden as "Oppression and abuse." Section 126 forbids actions that are deemed "Unreasonable publication." Section 128 proscribes "Unfair or unconscionable means" as enumerated therein. Section 129a prohibits what it describes as "Deceptive or oppressive telephone calls." Without question, these provisions describe conduct that has been deemed undesirable as a public policy matter and is therefore prohibited by this enactment. They are plainly not, however, all entrenched in fraud and/or deceit, as evidenced by their titles alone.

Only Section 127, entitled "Fraudulent, deceptive or misleading representations," contains violations that are self-described as falling within the ambit of fraud and/or deceit. However, even these specifically designated "fraudulent" and "deceptive" actions describe acts that, as the majority correctly notes, are not inherently and/or exclusively steeped in fraud. For instance, in Subsection (c), the mere "*failure* to clearly disclose the name and full business address" of the debt collector or owner of the claim is deemed a violation. (Emphasis added). A "failure" to do something may obviously be wholly innocent and/or negligent, at best. Moreover, as the majority also notes, actions such as those alleged herein which are not false, yet ostensibly violate these

7

provisions, [6] further suggest that even this Section does not derive of exclusively fraudulent or deceitful actions.

The wisdom of the *Wilt* rationale, which requires examination of the content and purpose of these statutory provisions, is patent and accordingly has been applied by a federal district court to these same provisions of the WVCCPA. In *Finney v. MIG Capital Management, Inc.*, No. Civil Action 2:13-02778, 2014 WL 1276159 (S.D.W. Va. Mar. 27, 2014), the District Court found that the WVCCPA claims alleged therein were not survivable upon application of the *Wilt* analysis. After careful examination of this Court's survivability jurisprudence, the District Court correctly observed

> [C]ertain deceptive practices may be prohibited by statute because they are unfair, without necessarily amounting to fraud. The same is true here. It may be "unfair or unconscionable" for a debt collector to contact directly a consumer known to be represented by counsel. W. Va. Code § 46A-2-128(e). But that statutory designation does not transform the underlying conduct into a common law claim for fraud.

*Id*. at *9 (citations omitted);[7] *see also Motzer Dodge Jeep Eagle, Inc. v. Ohio Atty. Gen.*, 642 N.E.2d 20 (Ohio Ct. App. 1994) (finding claim unfair or deceptive sales practices did

---

[6]In this case, the petitioner alleges that the respondent's purported use of the designation "Toll Free Number" on a caller ID is the use of a "business, company or organization name . . . other than the true name of the debt collector[]" in violation of Section 127(a).

[7]The District Court also astutely observed that this Court has declined to find statutory survivability in the majority of cases, making *Stanley v. Sewell Coal Co.*, 169 (continued . . .)

not survive consumer's death); *Ferguson v. Charleston Lincoln Mercury, Inc.*, 564 S.E.2d 94 (S.C. 2002) (finding cause of action alleging unfair methods of competition and unfair or deceptive acts or practices do not survive); *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex. App. 2000) ("A representative of an estate is not a 'consumer' under the DTPA because a DTPA cause of action does not survive the death of the original consumer"); *First Nat. Bank of Kerrville v. Hackworth*, 673 S.W.2d 218 (Tex. App. 1984) (finding cause of action under Deceptive Trade Practices Act did not survive death of customer). It is therefore plain that our survival statute likewise fails to afford survivability to unfair debt collection practices claims under the WVCCPA.

Finally, I note the petitioner's assertion that it would simply be "manifestly unjust" to disallow survivability, thereby allowing wrongdoers under the Act to "escape due to the death of their victim." The petitioner urges that this Court should "not send such a message." However, the petitioner misapprehends this Court's function insofar as determining survivability is concerned. It is not for this Court to assess the wisdom of

W.Va. 72, 285 S.E.2d 679 (1981), upon which the petitioner heavily relies, an outlier. *See Thompson v. Branches–Domestic Violence Shelter of Huntington, W.Va., Inc.*, 207 W.Va. 479, 534 S.E.2d 33 (2000) (holding statutory breach of confidentiality has one-year statute of limitations and is not survivable); *Slack v. Kanawha County Housing and Redevelopment Authority*, 188 W.Va. 144, 423 S.E.2d 547 (1992) (finding invasion of privacy did not survive); *Cavendish v. Moffitt*, 163 W.Va. 38, 253 S.E.2d 558 (1979) (finding claim for libel does not survive); *Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 161 W.Va. 588, 244 S.E.2d 321 (1978) (finding action to collect a civil penalty under the State's usury statute does not survive).

9

the survivability statute, but rather to apply it; this Court is not assembled for the purpose of "sending messages." It is the Legislature's function to set policy. Moreover, if mere "unfairness" commands survivability, our survival statute would be rendered meaningless. Any cause of action that does not survive under our statute allows the alleged wrongdoer to "escape"; the Legislature, however, has made a policy determination to allow certain actions to abate upon death. As this Court has observed countless times, "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Lewis v. Canaan Valley Resorts, Inc.*, 185 W. Va. 684, 692, 408 S.E.2d 634, 642 (1991) (citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)).

Accordingly, for the reasons set forth above, I respectfully concur.